United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEYMAN LASHKARI, et al.,<br>Plaintiffs,<br>v.<br>MARCO RUBIO, et al.,<br>Defendants. | Case No. 25-cv-10278-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 28 |

Plaintiffs Peyman Lashkari ("P. Lashkari") and Ahmad Lashkari ("A. Lashkari") filed this action, seeking to compel Defendants Marco Rubio and Donald J. Trump to adjudicate a Form I-130 visa application filed by Plaintiff P. Lashkari on behalf of his father, Plaintiff A. Lashkari. (First Amend. Compl. ("FAC") ¶¶ 1-2, Dkt. No. 25.) Pending before the Court is Defendants' motion to dismiss. (Defs.' Mot. to Dismiss, Dkt. No. 28.)

Having considered the parties' filings, the relevant legal authorities, and the arguments made at the October 15, 2026 hearing, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiff P. Lashkari is a United States citizen who filed Form I-130 petitions on behalf of his parents, who are Iranian citizens. (FAC ¶¶ 32, 104, 106.) After the petitions were approved, Plaintiff A. Lashkari and his wife were interviewed by a consular officer on October 31, 2024. (FAC ¶¶ 107, 110.) At the conclusion of the interview, the consular officer informed Plaintiff A. Lashkari and his wife that their applications would be subject to administrative processing pursuant to § 221(g) of the Immigration and Nationality Act ("INA"). (FAC ¶ 110.) The officer gave Plaintiff A. Lashkari and his wife a written 221(g) refusal notice, which stated that "this

refusal may be overcome once the missing documentation is submitted and/or administrative processing is completed." (FAC ¶ 111.)

On November 7, 2024, the administrative processing of Plaintiff A. Lashkari's wife was completed, and she was granted her visa. (FAC ¶ 112.) Because of the lack of movement on Plaintiff A. Lashkari's application, however, Plaintiffs filed this action on November 26, 2025. (FAC ¶ 113.)

On June 4, 2025, Defendant Trump issued Presidential Proclamation 10949 pursuant to INA §§ 212(f) and/or 215(a). (FAC ¶¶ 83, 92.) With limited exceptions, Proclamation 10949 suspended entry of all nationals of certain countries, including Iran. (FAC ¶ 85.) Proclamation 10949 was issued pursuant INA § 212(f). (FAC ¶ 84.) On June 7, 2025, the State Department announced a "No Visa Policy," which suspended both entry for and visa issuance to nationals of those countries. (FAC ¶ 90.) The "No Visa Policy" reflects the State Department's interpretation that "the INA requires the refusal of visas where section 212(f) applies and that the Department has no policy discretion to interpret section 212(f) differently." (FAC ¶ 95.) Thus, pursuant to the "No Visa Policy," applicants who are eligible for a visa but are subject to Proclamation 10949 are to be refused under § 212(f). (FAC ¶ 99.) On December 16, 2025, Defendant Trump issued Proclamation 10998, which expanded Proclamation 10949's entry ban and removed exemptions, including for immediate relatives of U.S. citizens. (FAC ¶ 6.)

On January 28, 2026, the embassy e-mailed a "refusal letter" to Plaintiff P. Lashkari, informing him that A. Lashkari had been found "ineligible for an immigrant visa under Section 212(f)" pursuant to the Presidential Proclamations. (FAC ¶ 115, Exh. F.) Per the refusal letter, the "decision cannot be appealed." (FAC, Exh. F at 2.)

On March 12, 2026, Defendants filed a motion to dismiss, arguing that Plaintiff A. Lashkari's application had been effectively decided based on the October 31, 2024 refusal under § 221(g) and the January 2026 refusal under § 212(f). (*See* Dkt. No. 14 at 1.) On June 5, 2026, the Court denied the motion to dismiss, explaining that the § 212(f) application was not a final decision. (Dismissal Order at 5, Dkt. No. 24.) As to the § 212(f) refusal, the Court found that the issue was not before the Court because Plaintiffs had not challenged that refusal, as it had occurred

United States District Court
Northern District of California

months after the operative complaint was filed. (*Id.* at 7.) Accordingly, the Court gave Plaintiffs leave to amend the complaint to add in a claim based on the § 212(f) refusal. (*Id.*)

On July 2, 2026, Plaintiff filed the operative complaint, bringing claims asserting: (1) the Presidential Proclamations violate separation of powers and the nondelegation doctrine, (2) the No Visa Policy is not in accordance with the law in violation of the Administrative Procedure Act ("APA"), (3) the No Visa Policy is arbitrary and capricious in violation of the APA, (4) the withholding of Plaintiffs' visa application is in violation of the APA, (5) the withholding of a mandatory entitlement owed to Plaintiffs is in violation of the APA, (6) the unreasonable delay of adjudication of the immigrant visa is in violation of the APA, and (7) the failure to adjudicate Plaintiffs' visa application is in violation of the Mandamus Act.

On July 24, 2026, Defendants filed this motion to dismiss. (Defs.' Mot. to Dismiss, Dkt. No. 28.) On August 8, 2026, Plaintiffs filed their opposition. (Pls.' Opp'n, Dkt. No. 30.) On August 14, 2026, Defendants filed their reply. (Defs.' Reply, Dkt. No. 31.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based

on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

## III. DISCUSSION

Here, Defendants seek dismissal on the grounds that: (1) the Presidential Proclamations do not violate the nondelegation doctrine or the APA, (2) the consular nonreviewability doctrine

precludes judicial review of Plaintiffs' claims related to the denial of the visa, and (3) consular officers acted properly in denying the visa pursuant to the Presidential Proclamation and the No Visa Policy. (Defs.' Mot. to Dismiss at 11, 12, 15.)

**A. Nondelegation Doctrine**

Plaintiffs challenge the Presidential Proclamations as being unlawful based on the nondelegation doctrine and the separation of powers. (FAC ¶ 195.) "The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 588 U.S. 128, 132 (2019). That said, "Congress may obtain the assistance of its coordinate Branches -- and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws. *Id.* at 135 (internal quotation omitted).

Here, Plaintiffs argue that INA § 212(f), codified at 8 U.S.C. § 1182(f), "attempts to delegate the power over immigration by allowing the President to suspend entry of foreign nationals," but fails to provide "limits or boundaries . . . for what the President can do with this power to suspend entry or enact restrictions once he sees the entry of foreign nationals into the U.S. as detrimental to U.S. interests." (Pls.' Opp'n at 12, 13.) Numerous courts have considered this precise argument in the context of Proclamation 10949 and dismissed it as "borderline frivolous." *Thein v. Trump*, Civil Action No. 25 - 2369 (SLS), 2025 U.S. Dist. LEXIS 162775, at *39 n.14 (D.D.C. Aug. 21, 2025); *see also Noori v. Rubio*, 8:25-cv-00400-DOC-ADS, 2025 U.S. Dist. LEXIS 264086, at *13 (C.D. Cal. Oct. 24, 2025); *Ariani v. Rubio*, No. 25-cv-349 (TSC), 2025 U.S. Dist. LEXIS 260937, at *17 (D.D.C. Dec. 17, 2025); *Mostafavi v. Trump*, Civil Action No. 25-cv-12287-ADB, 2026 U.S. Dist. LEXIS 212098, at *25 (D. Mass. Sep. 18, 2026).

In sum, "[t]o survive a nondelegation challenge, a statute need only 'provide[] an intelligible principle to guide an agency's exercise of discretion.'" *Ariani*, 2025 U.S. Dist. LEXIS 260937, at *18. Courts have found that while the Supreme Court's ruling in *Trump v. Hawaii* did not address a nondelegation challenge, the Supreme Court did "describe[] the 'textual limits' that Subsection 1182(f) places on the President, and those limits are sufficient to survive the 'intelligible principle' test the Court has prescribed to assess delegations." *Thein*, 2025 U.S. Dist. LEXIS 162775, at *39 n.14 (citing *Trump v. Hawaii*, 585 U.S. 667, 687-88). Specifically, the

Supreme Court articulated the requirements imposed by § 1182(f) on a president in issuing a Presidential Proclamation barring entry of certain groups, and considered whether those requirements were met. *Trump*, 585 U.S. at 684-88. In so finding, the Supreme Court acknowledged that "§ 1182(f) vests the President with 'ample power' to impose entry restrictions." *Id.* at 684. As Defendants point out, to accept Plaintiffs' argument that INA § 212(f) violates the nondelegation doctrine would be to also "accept that the Supreme Court extensively analyzed whether the President's exercise of authority in [*Trump v. Hawaii*] comported with § 1182(f)'s 'textual limits' despite the statute failing to impose any intelligible principle governing the President's exercise of authority." (Defs.' Reply at 6.)

As to the separation of powers argument, Plaintiffs make no argument independent of the nondelegation doctrine. In any case, as noted by *Thein*, "the separation of powers doctrine is an awkward fit for the Plaintiffs' claims for the simple reason that the President issued Proclamation 10949 pursuant to an act of Congress." 2025 U.S. Dist. LEXIS 162775, at *39 n.14.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' first claim because it is not a violation of the nondelegation doctrine.

**B. Consular Nonreviewability**

Under the doctrine of consular nonreviewability, "ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Khachatryan v. Blinken*, 4 F.4th 841, 849 (9th Cir. 2021) (internal quotation omitted). "For the doctrine to apply," however, "a denial of a visa application must have occurred." *Bozchalooi v. United States Dep't of State*, No. 2:25-cv-02983-DJC-SCR, 2026 U.S. Dist. LEXIS 85065, at *10 (E.D. Cal. Apr. 16, 2026). Thus, "the doctrine does not apply where a plaintiff seeks a final decision on their visa application rather than judicial review of a consular decision." *Id.*; *Sadeghian v. Rubio*, No. 2:24-cv-07725-AB-BFM, 2025 U.S. Dist. LEXIS 129574, at *8 (C.D. Cal. July 2, 2025) ("Although a consular official's decision to deny a visa to a foreigner is not subject to judicial review, a suit that challenges the authority of the consul to take or fail to take an action is reviewable.").

The Court previously found that consular nonreviewability did not apply as to the § 221(g) refusal of Plaintiff A. Lashkari's application. (Dismissal Order at 5.) Following the § 221(g)

refusal, however, Plaintiff A. Lashkari's application was refused under § 212(f) pursuant to the Presidential Proclamations and the No Visa Policy.

At least one court has found that a refusal to issue a decision per § 212(f) and the No Visa Policy was not a final decision, finding that "a refusal for administrative processing is not a final decision and thus does not discharge the agency's obligation to adjudicate visa applications." *Noori*, 2025 U.S. Dist. LEXIS 264086, at *11 (internal quotation omitted). Other cases, however, have found that a § 212(f) refusal is a final decision. For example, in *Mostafavi*, the consular officer sent an e-mail stating that the plaintiffs were ineligible for a visa under Proclamation 10949 and INA § 212(f), and that the "decision cannot be appealed." 2026 U.S. Dist. LEXIS 212098, at *10-11. Although the plaintiffs argued that the decision was not made within the consular officer's discretion because of the No Visa Policy, the court found that consular nonreviewability still applied because the applications had effectively been adjudicated. *Id.* at *15. Likewise, in *Thein*, the court rejected the plaintiffs' request to set aside any § 212(f) refusals, explaining that "review of completed decisions by consular officers is exactly what the doctrine of consular non-reviewability forbids." 2025 U.S. Dist. LEXIS 162775, at *21. Finally, in *Al-Shakliah v. Rubio*, the court also found that to the extent the plaintiffs were seeking to compel the defendants to adjudicate visa applications, the applications had been adjudicated when the defendants issued the § 212(f) refusals. Civil Action No. 25-3870 (JEB), 2026 U.S. Dist. LEXIS 103708, at *19 (D.D.C. May 11, 2026). Thus, consular nonreviewability applied.

Here, Plaintiffs appear to allege that Plaintiff A. Lashkari's application is "being indefinitely withheld in administrative processing" following the § 212(f) refusal. (FAC ¶¶ 114-15, 127.) Plaintiffs, however, allege no *facts* that would support this conclusory assertion that Plaintiff A. Lashkari's application is in administrative processing, and Plaintiffs offered no such facts at the hearing. Notably, the Court was previously able to find that the § 221(g) refusal was not a final decision because the § 221(g) refusal letter specifically found that the refusal could be overcome once missing documentation was provided and/or administrative processing was completed, Plaintiff A. Lashkari was asked to submit his passport and told he would undergo administrative processing, and his application was subsequently refused under § 212(f) -- a refusal

that would be unnecessary if the § 221(g) refusal was final. (Dismissal Order at 5.) Here, in contrast, the § 212(f) refusal makes no mention of administrative processing, instead stating that the "decision cannot be appealed." (FAC, Exh. F.)

In opposition, Plaintiffs argue that the § 212(f) refusal is not protected by consular nonreviewability because it was not made by a consular officer but was required by the No Visa Policy. (Pls.' Opp'n at 18-19.) As noted in *Mostafavi*, however, that does not change that the visa application was adjudicated. 2026 U.S. Dist. LEXIS 212098, at *15. Rather, as explained in *Al-Shakliah*, the doctrine of consular nonreviewability "turns on the character of the claim, not the degree of discretion exercised in a given refusal." 2026 U.S. Dist. LEXIS 103708, at *20. In short, it is irrelevant whether the refusal was discretionary or mandatory; the primary issue is whether a final decision was issued at all.

Plaintiffs also contend that the No Visa Policy itself is improper. (Pl.'s Opp'n at 19-20.) This is ultimately a complaint about the validity of the No Visa Policy, not whether a decision was actually made for purposes of consular nonreviewability.

Accordingly, the Court finds that to the extent Plaintiff brings claims that challenge the decision on Plaintiff A. Lashkari's application, such claims must be dismissed pursuant to the doctrine of consular nonreviewability. This encompasses claims four through seven, which directly concern Plaintiff's alleged entitlement to a visa, as well as claims two and three to the extent they are premised on the individualized decision regarding Plaintiff A. Lashkari's visa application.

This does not, however, resolve claims two and three in their entirety. Rather, multiple courts have found that even though the individualized decision on the visa application is barred by consular nonreviewability, the No Visa Policy is still subject to challenge. "While the doctrine of consular nonreviewability shields a consular officer's determination as to a specific application, it does not extend so far as to allow the Executive to issue a policy deviating from legislatively mandated procedures." *Mostafavi*, 2026 U.S. Dist. LEXIS 212098, at *17 (internal quotation omitted). Thus, "[a] policy challenge can proceed even where the named plaintiffs themselves have received final visa refusals if the refusals followed from the policy under attack." *Al-*

*Shakliah*, 2026 U.S. Dist. LEXIS 103708, at *15; *see also Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025) (finding that consular nonreviewability did not foreclose the challenge to the State Department's guidance because when a plaintiff pursues a "challenge[] to the lawfulness of regulations or policies governing consular decisions, courts may review them to assure that the executive departments abide by the legislatively mandated procedures").

**C. No Visa Policy**

Finally, Defendants argue that there is no viable APA claim in this case. As an initial matter, Defendants contend that the APA does not apply in this case because the president is not an agency, and Plaintiffs have not identified a final agency action distinct from the Presidential Proclamations at issue. (Defs.' Mot. to Dismiss at 14.) This misapprehends Plaintiffs' claims; Plaintiffs do not bring an APA claim as to the Presidential Proclamations, but the No Visa Policy. (*See* SAC ¶¶ 197, 211-13.) Courts, however, have specifically found that the No Visa Policy can be challenged under the APA. *See Al-Shakliah*, 2026 U.S. Dist. LEXIS 103708, at *31-32 ("As courts in this district have recognized, a plaintiff may challenge an agency's adherence to its own implementing policies or guidance, even when the underlying directive is a Presidential Proclamation."); *Noori*, 2025 U.S. Dist. LEXIS 264086, at *14.

Substantively, Defendants contend that the No Visa Policy is consistent with "the Department's longstanding practice . . . to refuse visas to aliens who are barred from entering the United States by a presidential action under § [212](f)." (Defs.' Mot. to Dismiss at 12.) Defendants assert that consistent with INA § 212, an applicant who is unable to enter must be denied a visa. (*See* Defs.' Reply at 4.) Multiple courts have found that Defendants' argument improperly conflates entry with visa eligibility, definitively ruling that "the Department of State cannot rely on proclamations issued pursuant to [INA § 212(f) to deny visa applications." *Thein*, 2025 U.S. Dist. LEXIS 162775, at *41.

As explained in *Thein*, the Court must first "start[] with the 'basic distinction between admissibility determinations and visa issuance that runs throughout the INA.'" 2025 U.S. Dist. LEXIS 162775, at *41 (quoting *Trump*, 585 U.S. at 694). The INA "is rife with examples distinguishing between the two concepts." *Trump*, 585 U.S. at 694 n.3. For example, [n]ot every



United States District Court
Northern District of California

visa holder may enter the United States, while "not every inadmissible individual is necessarily ineligible for a visa." *Thein*, 2025 U.S. Dist. LEXIS 162775, at *41. In short, "entry" and "admission" are not interchangeable terms, but are distinct terms. *Id.* at *42; *see also Noori*, 2025 U.S. Dist. LEXIS 264086, at *2.

INA § 212(f), the statutory authority which Defendant Trump relied upon in issuing the Presidential Proclamations, authorizes the president to "suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f). Thus, "[p]lain as day, [INA § 212(f)] addresses only the question of entry, not the issuance of visas, which is "[n]o doubt . . . why Proclamation 10949 itself only speaks to admissibility." *Thein*, 2025 U.S. Dist. LEXIS 162775, at *42. Accordingly, courts have concluded that guidance such as the No Visa Policy "that claim that visa denials are mandatory under [INA § 212(f)] despite that statute appearing to say no such thing" is not in accordance with the law and in excess of statutory authority. *Id.* at *47; *see also Mostafavi*, 2026 U.S. Dist. LEXIS 212098, at *36 ("Courts have found, with respect to Proclamation 10949 and other similar proclamations, that although the President may suspend the <u>entry</u> of certain aliens through a proclamation, a suspension of entry under [INA § 212(f) has no bearing on whether the person is inadmissible under [INA § 212(a)] or ineligible to receive a visa under § 1201(g). Accordingly, courts have concluded that the Department of State cannot rely on proclamations issued pursuant to [INA § 212(f)] to deny visa applications."); *Al-Shakliah*, 2026 U.S. Dist. LEXIS 103708, at *38 ("A person subject to a Presidential Proclamation issued pursuant to [INA § 212(f)] . . . is merely ineligible to enter, not ineligible to receive a visa."); *Noori*, 2025 U.S. Dist. LEXIS 264086, at *13 ("[T]he Court concludes that the Department of State cannot rely on proclamations issued pursuant to [INA § 212(f)] to deny visa applications."); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 315 (D.D.C. 2020) ("[S]ections 1201(g) and 1182(a) do not authorize State to suspend visa adjudications when the President suspends entry.").

In response, Defendants point to 8 U.S.C § 1182e(a) and § 1182f(a), which identifies certain groups who should be denied entry, such that the Secretary of State shall not issue a visa to such individuals. (Defs.' Reply at 4.) Yet it is unclear how this benefits Defendants, as such

provisions only show that Congress knew how to distinguish between denial of entry and denial of a visa application, yet still limited § 212(f) to denial of entry.

Accordingly, the Court "sees no reason to depart from" the many holdings finding that a No Visa Policy based on the Presidential Proclamations is not in accordance with the law, and thus may be challenged under the APA.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. The Court DISMISSES Plaintiff's first and fourth through seventh claims, as well as the second and third claims with prejudice to the extent they are based on the individualized decision on Plaintiff A. Lashkari's visa application. Defendants shall file an answer within fourteen days of the date of this order.

IT IS SO ORDERED.

Dated: October 21, 2026

KANDIS A. WESTMORE
United States Magistrate Judge